IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EDWARD LAWTON SPIVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:19-cv-00670 |
| | ) | |
| MOHAWK ESV, INC., | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Following briefing, oral argument, and at the end of the hearing on defendant Mohawk ESV, Inc.'s motion for summary judgment, the court granted summary judgment in favor of Mohawk, with a written opinion and order to follow. (Dkt. No. 30.) This opinion sets forth the court's decision to grant summary judgment in favor of Mohawk.

I. BACKGROUND

**A. Factual Background**

In February 2011, defendant Mohawk ESV, Inc., a flooring manufacturer, hired Edward Lawton Spivey to work as a manager of its weaving department. (Spivey Dep., Dkt. No. 21-6 at 3.) In January 2012, Mohawk promoted Spivey to manager of the Hillsville plant. (*Id.* at 4–5.) As Plant Manager, Spivey was responsible for "all aspects of [the] operation" of the Hillsville Plant, including "[t]he safety of the employees, the quality of the product . . . , and the cost and efficiency' of the Hillsville Plant." (*Id.* at 7.)

**1. Injuries at the Hillsville Plant**

Between 2015 and 2018, Mohawk experienced an increase in the number of Occupational Safety and Health Administration ("OSHA") recordable injuries at the Hillsville

1

plant. (Craig Dep., Dkt. No. 26-7 at 18.) During the 2015 reporting year there were no reportable injuries. (*Id.*) During the 2016 reporting year there was one reportable injury. (*Id.*) During the 2017 reporting year, there were three reportable injuries. (*Id.*) Finally, during the 2018 reporting year, there were five reportable injuries by October of that year. (*Id.*)

### 2. Performance Evaluations and Employee Surveys

Mohawk conducted annual performance evaluations of Spivey. In March 2017, Spivey received his 2016 annual performance evaluation and his overall performance rating was "Fully Successful/Effective Performance/Fully Meets Expectations." (2016 Performance Evaluation, Dkt. No. 26-10 at 1.) In March 2018, Spivey received his 2017 annual performance evaluation and his overall rating was "Partially Successful Performance/Needs Improvement." (2017 Performance Evaluation, Dkt. No. 26-13 at 1.) His rating declined, in part, due to safety issues at the Hillsville plant. Spivey received an "unsuccessful/unacceptable" rating for his performance related to OSHA events. (*Id.* at 5.) The performance evaluation explained that, "[Mohawk's] safety record moved in the wrong direction in 2017 as [it] tripled [the] incident rate from 2016." (*Id.*)

In addition to performance reviews, Mohawk conducted employee surveys. In October 2017, Mohawk conducted an employee survey at the Hillsville plant. (2017 OE Survey, Dkt. No. 21-11.) As compared to the 2016 employee survey, employee ratings fell in multiple categories, including safety and employee engagement. (*Id.*) Mohawk conducted another employee survey from September 2018 through November 2018. (2018 Employee Survey Results, Dkt. No. 27-2.) The 2018 survey received 20,100 responses, 96 of which mentioned Spivey. (*Id.* at 5.) Of the 96 responses regarding Spivey, 66% were favorable, 26% were neutral, and 8% were unfavorable. (*Id.*)

### 3. Hillsville Plant Expansion

In March 2018, Mohawk began replacing looms at the Hillsville plant with "newer, faster equipment." (Craig Declaration, Dkt. No. 21-1 at 2.) Many issues arose with the equipment upgrade process. Some of the new equipment needed unanticipated repairs before installation. (*Id.*) Mohawk acknowledged that these problems were beyond Spivey's control. (*Id.*) According to Spivey, the condition of the equipment "very much affected the morale of the plant.'" (Spivey Dep., Dkt. No. 28-6 at 188.).

### 5. Spivey's Termination

On October 1, 2018, an employee was injured while working at the Hillsville plant, resulting in the partial amputation of the employee's finger. (Spivey Dep., Dkt. No. 21-6 at 24–25, 43–45.) Upon learning of this injury, Joseph Faircloth, the Senior Vice President of Manufacturing, directed Chris Craig, the Director of Backing Manufacturing, to terminate Spivey's employment. (*Id.* at 5–6; Craig Dep., Dkt. No. 21-7 at 18.) Craig claims that he wanted to assess the situation at the Hillsville plant before terminating Spivey's employment. (Craig Dep., Dkt. No. 21-7 at 18–19.) He further states that he conducted a serious of interviews with employees at the Hillsville plant, "checking for safety incidences, making sure that people were following [Mohawk's] safety procedures, wearing earplugs, wearing safety glasses, and questioning [employees] about what was going on in the facility, how they perceived things, any issues they were having and things of that nature." (Craig Dep., Dkt. No. 21-7 at 15–16.) Craig concluded that there were numerous safety issues and that Spivey's management style was harming employee morale. (*Id.* at 9–10, 19–20.) Craig discussed these findings with Faircloth, and they claim that they jointly decided to terminate Spivey's employment. (*Id.*) On October 4, 2018, after consultation with Human Resources Director Robert Stevenson, Mohawk terminated

Spivey's employment. (*Id.* at 18–21; Stevenson Dep., Dkt. No. 21-12 at 2; Dkt. No. 1 ¶ 9.) Craig met with Spivey to relay the news of his termination, "citing vague performance issues" and "inform[ing] him that Mohawk was 'looking to make a change.'" (Dkt. No. 1 ¶ 30.) Spivey was 63 years-old at the time his employment was terminated, and he believes he was terminated on account of his age. (*Id.* ¶ 1, 7, 11.)

**B. Procedural Background**

On October 4, 2019, Spivey filed suit against Mohawk alleging age discrimination in violation of the Age Discrimination in Employment Act. (Compl. ¶ 1 (citing 29 U.S.C. §§ 621–634; 28 U.S.C. § 1331; 28 U.S.C. §1343(a)(4).)[1] Spivey claims that Craig "subjected him to discrimination by treating him differently, and less preferably, than younger Mohawk employees, resulting in Mr. Spivey's termination from employment and subsequent replacement by a younger Mohawk employee." (*Id.* ¶ 46, 47.) On January 6, 2020, Mohawk filed an answer denying the claims of age discrimination. (Answer at 5; Dkt. No. 6.)

On January 8, 2020, Mohawk filed a motion for summary judgment. (Def.'s Mot. for Summary J.; Dkt. No. 20.) Mohawk argues that its decision to terminate Spivey's employment was based on safety concerns and the increase in recordable injuries at the Hillsville plant during Spivey's tenure. (Def.'s Br. ¶ 46–50.) In addition, Mohawk claims that Spivey's management style, which allegedly harmed employee morale, was a factor in the termination. (*Id.* ¶ 51.) Mohawk maintains that "Spivey's age had nothing to do with the decision to terminate Spivey's employment." (*Id.* ¶ 56.) Mohawk argues for summary judgment because: (1) Spivey cannot establish a prima facie case of age discrimination; and (2) even if he could, Mohawk has

---

[1] The EEOC issued Spivey a right to sue letter on July 10, 2019. (Dkt. No. 1-2.)

articulated a legitimate, non-discriminatory reason for termination and Spivey has not presented any evidence of pretext. (*Id.* at 17–20.)

On January 29, 2021, Spivey filed a response in opposition to the motion for summary judgment. (Pl.'s Br., Dkt. No. 27.) Spivey argues that he does have a prima facie case of age discrimination and Mohawk's stated reasons for terminating Spivey are pretextual. Spivey identifies contradictions and inconsistencies in Mohawk's reasoning for terminating his employment. (*Id.* at 17.) Specifically, Spivey argues that Faircloth, Craig, and Stevenson all give different reasons for his termination and different accounts of the termination timeline. (*Id.* at 10–14.) Moreover, Spivey notes that the evidence Craig and Faircloth claim to have relied on in making the termination decision did not exist at the time of the termination. (*Id.*) For example, there is no evidence that Craig ever interviewed the Hillsville plant employees following the October 2018 injury. In addition, the 2018 employee survey Faircloth claims to have relied on in making the termination decision was incomplete at the time of Spivey's termination. (*Id.*) Spivey claims that the sum of these contradictions and inconsistencies amount to evidence of pretext. (*Id.* at 18–19.) Spivey also claims that there remain genuine disputes as to material facts regarding Spivey's disciplinary record, Mohawk's communication of Spivey's alleged performance issues, and evidence Mohawk management relied on in terminating Spivey, among other facts. (*Id.* at 20.) For these reasons Spivey argues against summary judgment.

On February 11, 2021, Mohawk filed a reply. (Reply, Dkt. No. 29.) Mohawk asserts that Spivey has no direct evidence of age discrimination, has not made a prima facie case of discrimination, and has not shown evidence of pretext. (*Id.*)

### III.  DISCUSSION

"The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age." *Cockman v. Circle K Stores Inc.*, 807 F. App'x 268 (4th Cir. 2020) (quoting *EEOC v. Balt. Cty.*, 747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a))). "To demonstrate a claim under the ADEA, [a plaintiff] either ha[s] to provide direct evidence of discrimination or demonstrate a prima facie case of discrimination." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973); *Mereish v. Walker*, 359 F.3d 330, 333-35 (4th Cir. 2004) (applying McDonnell Douglas framework to ADEA claims)).

Here, Spivey does not provide direct evidence of age discrimination.  Instead, he proceeds under the *McDonnell Douglas* burden-shifting framework.  However, Spivey is unable to make a prima facie case of discrimination or show that Mohawk's reasons for terminating Spivey's employment were pretextual.

**A.  No Prima Facie Case of Discrimination**

"To establish a prima facie case of age discrimination under *McDonnell Douglas*, [a plaintiff] ha[s] to demonstrate that: '(1) he is a member of a protected class, (2) he suffered an adverse employment action (such as discharge), (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) his position remained open or was filled by a similarly qualified applicant outside the protected class." *Cockman*, 807 F. App'x at 269 (quoting *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006)).  Spivey is over 40 years old and thus, a member of the class protected by the ADEA.  (Def.'s Br. at 17.)  Moreover, Spivey suffered an adverse employment action when Mohawk terminated his employment.  (*Id.*)  In addition, Spivey's position was filled by a

younger employee after he was terminated. (Compl. 6.) The parties do not dispute these elements. However, the parties dispute the third prong of *McDonnell Douglas* test, namely whether Spivey was performing his job duties at a level that met Mohawk's legitimate expectations.

"Whether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and [the employee's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." *Morrall v. Gates*, 370 F. App'x 396, 398 (4th Cir. 2010) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). "A plaintiff must show by a preponderance of the evidence that he met the employer's legitimate job expectations to prove his prima facie case [and] the employer may counter with evidence defining the expectations as well as evidence that the employee was not meeting those expectations." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515–16 (4th Cir. 2006); *see also Rigsby v. Nat'l Sch. Boards Ass'n*, No. 119CV00168AJTMSN, 2020 WL 7224248, at *5 (E.D. Va. Nov. 6, 2020) ("Only a preponderance of the evidence is required to establish a prima facie case.").

In addition, an employee may counter an employer's assertion that job expectations were not met "with evidence that demonstrates (or at least creates a question of fact) that the proffered 'expectation' is not, in fact, legitimate at all." *Warch*, 435 F.3d at 517. In other words, "where application of the qualification or expectation element of the prima facie case seems to preclude an otherwise meritorious claim, the plaintiff is free to demonstrate that the employer's qualifications or expectations are not, in fact, 'legitimate.'" *Id.*

Here, Spivey has failed to make a prima facie case of age discrimination because he has not shown that he was performing his job duties at a level that met Mohawk's legitimate

7

expectations at the time of the adverse employment action. Although Spivey received a positive performance review in 2016, his 2017 performance review shows that Mohawk had concerns about Spivey's safety-related performance. (Def.'s Br. ¶ 15–16, 28–29.) While Spivey received positive feedback in the 2018 employee survey, that does not negate Mohawk's concerns about Spivey's performance related to plant safety as evidenced by the consistent increase in OSHA events at the Hillsville plant from 2015 through 2018. (*Id.* ¶ 45.) Moreover, Mohawk's expectation that Spivey maintain a safe working environment at the Hillsville plant is a legitimate expectation. Although the plant expansion may have contributed to safety issues at the plant, the number of reportable OSHA events began increasing in 2016, long before Mohawk began the plant expansion in the summer of 2018. (*Id.*) Finally, the timing of Spivey's termination, just days after the fifth injury at the Hillsville plant in 2018, further indicates that Spivey was not meeting Mohawk's legitimate safety-related expectations at the time they terminated his employment. For these reasons, Spivey has not shown a prima facie case of employment discrimination.

## B. Non-Discriminatory Reason for Termination

Even if Spivey was able to prove a prima facie case of age discrimination, there is no evidence that Mohawk's purported reasons for his termination were pretextual. "If [a] plaintiff makes a prima facie showing [of discrimination], then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action." *Cockman*, 807 F. App'x at 269 (citing *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002)). "If the employer comes forward with such a reason, 'the burden reverts to the plaintiff to establish that the employer's nondiscriminatory rationale is a pretext for intentional discrimination.'" *Id.* (quoting *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 258 (4th Cir. 2006)).

"To do so, the plaintiff must 'show that the employer's proffered explanation is unworthy of credence, thus supporting an inference of discrimination, or offer other forms of circumstantial evidence sufficiently probative of intentional discrimination.'" *Id.* (quoting *Dugan*, 293 F.3d at 721).

"In order to show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)). "Once the plaintiff offers such circumstantial evidence, the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Id.* "[The Fourth Circuit] has allowed an inference of pretext in cases where an employer has made substantial changes to its proffered reason for discharge over time." *Id.* (citing *Sears Roebuck & Co.*, 243 F.3d at 852–53; *Wesley v. Arlington Cnty.*, 354 F. App'x 775, 782 (4th Cir. 2009)).

Here, Spivey argues that the explanation for his termination was inconsistent among Mohawk managers and not based on evidence. However, the testimony of Craig, Faircloth, and Stevenson is largely consistent. Craig recounts receiving a phone call from Faircloth directing him to fire Spivey following the October 2018 injury at the plant. (Pl.'s Br. at 12.) Faircloth recounts Craig wanting to investigate the situation at the Hillsville plant before making the decision to terminate Spivey's employment. (*Id.*) Both Faircloth and Craig relied on the increasing injury rate at the Hillsville plant as a reason for Spivey's termination. (Faircloth Dep. at 7–9, Dkt. 28-1 ("It was [] the results of the 2016/2017 surveys, coupled with the excessive amount of accidents in 2018"); Craig Dep. at 12, Dkt. No. 21-7 ("Because our accident rate had gone so high at the Hillsville facility.")). Even though Spivey is correct that the 2018 employee

9

survey was not complete at the time Spivey was terminated and that there is no documentation of Craig's interviews with Hillsville staff, the safety concerns articulated by Craig and Faircloth for Spivey's termination are consistent and supported by the increase in safety incidents at the plant.[2]  As such, there is no evidence that Mohawk's stated reason for terminating Spivey's employment was pretextual.

## III.  CONCLUSION

For the aforementioned reasons, the court will enter an order granting the defendant's motion for summary judgment (Dkt. No. 20).

Entered: June 15, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[2] Spivey also argues that contradictory testimony about whether Mohawk placed him on "probation" prior to his termination is evidence of pretext.  (Pl.'s Br. at 6.)  However, this, too, is insufficient to indicate that Mohawk's safety concerns which led to Spivey's termination were pretextual.